IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BANILLA GAMES, INC., and
GROVER GAMING, INC.,
    Plaintiffs,

v.                                                     Civil No. 3:22cv131 (DJN)

AKS VIRGINIA, LLC, and
AMAR SINGH,
    Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiffs' Motion for Default Judgment (ECF No. 19), moving the Court for entry of a default judgment against Defendants AKS Virginia, LLC and Amar Singh (collectively, "Defendants"). Defendants did not file a response to Plaintiffs' motion or any prior pleadings in this matter, and the deadline to respond has passed. For the reasons stated herein, Plaintiffs' Motion for Default Judgment will be GRANTED.

## I.    BACKGROUND

This case arises out of Defendants' use and public display of electronic skill-based games (the "Illicit Games") produced by Plaintiffs Grover Gaming, Inc. and Banilla Games, Inc. and using Plaintiffs' computer file and associated audiovisual effects (the "Copyrighted Work"). On March 8, 2022, Plaintiffs filed a Verified Complaint ("Complaint" (ECF No. 1)) against Defendants asserting that Defendants violated the Copyright Act, 17 U.S.C. § 501, *et seq.*, in the use, distribution, public display and/or sale of certain copyrighted work without Plaintiffs' consent. In the Complaint, Plaintiffs seek preliminary and permanent injunctive relief and an award of damages. Plaintiffs also filed a motion for a preliminary injunction on the same day. (ECF No. 4.)

On March 18, 2022, Plaintiffs filed verifications that they had served the Complaint, Summons and preliminary injunction motion on Defendants on March 10, 2022. (ECF Nos. 10-14.) Defendants never made an appearance in this Court to contest the allegations in the Complaint or otherwise defend this action.

On April 28, 2022, at the request of Plaintiffs (ECF No. 16), the Clerk of the Court entered default against Defendants (ECF No. 17). Following the entry of default, on September 9, 2022, Plaintiffs filed the instant Motion pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure (ECF No. 19). Plaintiffs now seek (1) statutory damages in the amount of $300,000; (2) a permanent injunction enjoining and restraining Defendants from their continued use, publication and display of the copyrighted work at issue; (3) a permanent injunction enjoining Defendants from engaging in their deceptive practices, including marketing and passing off the Illicit Games in interstate commerce; (4) a permanent injunction enjoining Defendants from continuing to use the Illicit Games; (5) an order requiring delivery of the Illicit Games to the Court for impoundment as well as an accounting of the Illicit Games; (6) an order requiring the delivery to Plaintiffs for destruction of all products associated with the Copyrighted Work; (7) an award of attorneys' fees and costs in the amount of $14,112.80; and (8) an award of pre-judgment interest from January 31, 2022, and post-judgment interest in the amount allowed by law. (Mot. at 2.)

## II. LEGAL STANDARD

Obtaining a default judgment requires two steps under the Federal Rules of Civil Procedure. First, the Clerk of the Court must enter default against a party when that party has "failed to plead or otherwise defend" its case. Fed. R. Civ. P. 55(a). Then, under Rule 55(b), the Clerk may enter default judgment if the plaintiff alleges a claim for a "sum certain or sum that

can be made certain by computation." Fed. R. Civ. P. 55(b)(1). Generally, the principal and interest on a loan are sums certain within the meaning of Rule 55(b)(1). *United States v. Smith*, 212 F.R.D. 480, 481 (M.D.N.C. 2002); *Federal Deposit Ins. Corp. v. Spartan Mining Co., Inc.*, 96 F.R.D. 677, 683 (S.D.W.Va. 1983).

In all other cases, the plaintiff must apply to the Court for default judgment. Fed. R. Civ. P. 55(b)(2). Courts enter default judgment sparingly and instead prefer to decide cases on the merits. *See, e.g., Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953-54 (4th Cir. 1987) (setting aside default judgment entered against blameless party); *United States v. Moradi*, 673 F.2d 725, 727-28 (4th Cir. 1982) (same). To that end, a defaulting defendant admits all well-plead factual allegations in the complaint, but the Court must independently determine if these allegations support the relief sought. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The Court may conduct a hearing or make referrals if it needs to further assess the evidence, conduct an accounting, determine the amount of damages or investigate any other matter. Fed. R. Civ. P. 55(b)(2). However, if "the damages are ascertained, determined, and fixed, 'or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits,'" the Court need not conduct a hearing. *Eason v. Merrigan*, 2004 WL 903756, at *1 (D. Md. 2004) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). In all circumstances, "a default judgment may not exceed [the] amount that is prayed for in the demand for judgment." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

### III. DISCUSSION

Plaintiffs have satisfied the procedural requirements for entry of default judgment, as the properly served Defendants have completely failed to plead or otherwise defend the case,

3

including by failing to respond to the Motion. *See Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (affirming default judgment based on defendants' failure to appear at hearings and respond to notices sent by the court). Rule 12(a) of the Federal Rules of Civil Procedure requires that a defendant serve an answer within twenty-one days of being served with the summons and complaint. Fed. R. Civ. P. 12(a). Plaintiffs personally served Singh and AKS Virginia (through its agent, Singh) on March 10, 2022. Defendants failed to file an answer or otherwise respond within the requisite time period, so the Clerk made an Entry of Default on April 28, 2022. Thus, Plaintiffs have met the procedural requirements of Rule 55(a).

### A.  Liability

The Court must next consider whether the allegations in the Complaint support the relief that Plaintiffs seek. *Ryan*, 253 F.3d at 780. In making that determination, the Court must assume the truth of all well-pled factual allegations, except those relating to the amount of damages. *Id.*; *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

In making this assessment here, the Court concludes that Plaintiffs have alleged facts sufficient to support the elements of a copyright infringement claim. To prove a copyright infringement claim, a plaintiff must prove (1) that it owned a valid copyright, and (2) that the defendant copied original elements of the plaintiff's copyrighted work. *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001) (citing *Feist v. Publ'ns, Inc. v. Rural Tel. Serv. Co.* 499 U.S. 340, 361 (1991)). Plaintiffs have alleged that they own the Copyrighted Work (Compl. ¶ 1), and they attached the Certificate of Registration from the United States Copyright Office (Compl. Ex. C). Thus, the facts alleged satisfy the first element of an infringement claim.

4

Additionally, Plaintiffs allege that Defendants had in their possession unauthorized, pirated or hacked versions of the Copyrighted Work and allowed their customers to use the Illicit Games. (Compl. ¶ 35.) Plaintiffs further allege that Defendants purchased at least two gaming cabinets containing unauthorized, pirated or hacked versions of the Copyrighted Material on the secondary market, and Plaintiffs have not created, sold or otherwise authorized the use of those games. (Compl. ¶ 37.) Plaintiffs further allege that third parties sell these Illicit Games for "significantly less than genuine products," allowing Defendants to increase their profits at the expense of Plaintiffs. (Compl. ¶ 40.) Finally, Plaintiffs allege that Defendants "purchased at least two of the Illicit Games that knowingly misappropriated Grover's Trade Secrets and Copyrights." (Compl. ¶ 41.)

Although Plaintiffs allege that third parties actually copied the work, Defendants can face liability for the infringing acts of another. *See EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 506 (E.D. Va. 2009) ("There seems to be no dispute among courts that a person can, in certain circumstances, be found to have infringed a copyright based on the acts of another." (citing *Metro-Goldwyn-Mayer Studios, Inc., v. Grokster, Ltd.*, 545 U.S. 913 (2005) and *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984))). "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studiosi,* 545 U.S. at 930. Here, Plaintiffs' allegations that Defendants profited from offering the Illicit Games to its customers suffices to meet the second element for an infringement claim.

Deeming all of Plaintiffs' alleged facts admitted due to Defendants' failure to respond, the Court finds that Plaintiffs' allegations contain all of the required elements for copyright infringement. Accordingly, the Court will GRANT Plaintiffs' Motion for Default Judgment.

## B.   Damages

The Court must next determine the amount of damages to award Plaintiffs. The Copyright Act provides that "an infringer of copyright is liable for either . . . the copyright owner's actual damages and any additional profits of the infringer . . . or . . . statutory damages." 17 U.S.C. § 504(a). The statutory damages provision states that a copyright owner may elect statutory damages, instead of actual damages and profits, "in a sum of not less than $750 or more than $30,000 as the court considers just" with respect to any one work for which the defendant infringed. 17 U.S.C. § 504(c)(1). However, if the defendant commits the infringement willfully, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Plaintiffs have elected to pursue statutory damages instead of actual damages, urging the Court to award it damages for two willful infringements, totaling $300,000 in statutory damages. The statute does not define willfulness, but the Fourth Circuit has explained that "infringement is willful if the defendant has knowledge, either actual or constructive, that its actions constitute an infringement, or recklessly disregards a copyright holder's rights." *Lyons Partnership*, 243 F.3d at 799-800 (cleaned up).

A review of the factual allegations does not convince that Court that Defendants acted willfully in their infringement. First, Defendants' infringement does not stem from their own copying of copyrighted work, but instead from purchasing a product that a third party had copied. Other than the fact that Defendants paid less than market value, Plaintiffs do not allege

how Defendants would have known that the Illicit Games infringed on Plaintiffs' copyright. Plaintiffs do not allege that Defendants knew of Plaintiffs' copyright nor that they ever informed Defendants of the infringement. Although Plaintiffs allege that Defendants purchased two Illicit Games "that knowingly misappropriated Grover's Trade Secrets and Copyrights," it remains unclear whether "knowingly" applies to Defendants or to the third parties that misappropriated the trade secrets and copyright. In any event, Plaintiffs offer no further facts to support their allegation that Defendants knew of the misappropriation. Accordingly, the Court finds that these allegations do not support a finding of willfulness to justify an award of enhanced statutory damages.

The Court must determine the amount of damages between $750 to $30,000 per infringement that it will award. In determining the amount of statutory damages, courts consider the expenses saved by the defendant in avoiding a licensed product; profits reaped by the defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement. *EMI April Music*, 618 F. Supp. 2d at 509. Here, the Court has determined that Plaintiffs' allegations do not support a finding of willfulness. Plaintiffs' allegations largely stem from the fact that Defendants bought two counterfeited games and allowed their customers to use the Illicit Games at their store, thereby cutting into Plaintiffs' expected profits from the sale of two genuine games. Plaintiffs state that these genuine games cost as much as $9,590.90 each. Thus, although "[s]tatutory damages are intended not merely for the restitution of profit or reparation of injury, but to deter wrongful conduct," *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003), the Court does not believe that these allegations warrant statutory damages near the top of the range for the purchase and use of two counterfeit machines that would normally cost under $10,000. However, due to the intended deterrent effect

7

of statutory damages, the Court will award Plaintiffs $10,000 for each Illicit Game, for a total of $20,000.

### C. Injunctive Relief

Plaintiffs also seek an order enjoining Defendants from further infringing on their copyrights and ordering the impoundment and destruction of the Illicit Games. The Court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Additionally, Rule 65(d) requires that every order granting an injunction set forth the reasons for its issuance and specifically detail its terms. Fed. R. Civ. P. 65(d). To obtain a permanent injunction against copyright infringement, a plaintiff must demonstrate:

> (1) that it has suffered irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Phelps & Assoc. v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007). Even if a plaintiff makes this showing, "whether to grant the injunction still remains in the 'equitable discretion' of the court." *Id.*

The Court finds that the allegations support an injunction. With respect to irreparable injury, the Fourth Circuit has noted that "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Phelps*, 492 F.3d at 544. Moving to the adequate remedy at law prong, the Fourth Circuit noted that damages at law would not remedy the continuing existence of the infringement. *Id.* The court commented that "while the calculation of future damages and profits for each future sale might be possible, any such effort would entail a substantial amount of speculation and guesswork that renders the effort difficult or impossible in this case." *Id.* These first two prongs often overlap.

8

*EMI April Music*, 618 F. Supp. 2d at 510-11. Based on the allegations of ongoing infringement and the difficulty in quantifying the amount of monetary harm from Defendants allowing customers to play the Illicit Games, the Court finds that Plaintiffs have satisfied the first two prongs for enjoining Defendants from further infringing.

The Court must next address the balance of hardships. Having not responded at all, Defendants have offered no hardships that the injunction would create for them. Indeed, the Court cannot discern any, beyond the requirement that Defendants follow the law. Accordingly, this factor favors an injunction to prohibit Defendants from further infringing on Plaintiffs' copyright.

The fourth factor requires Plaintiffs to show that a permanent injunction would not disservice the public interest. "It is easy to understand that the public interest in the Constitutional protection of copyright, and the congressional enactment of the Copyright Act, is enhanced by issuance of a permanent injunction where copyright infringement has taken place." *Id.* at 511. Conversely, the Court cannot discern any harm to the public in permanently enjoining Defendants from violating copyright laws. Therefore, the Court finds that Plaintiffs have satisfied the public interest prong and will enjoin Defendants from further using the Illicit Games. However, the Court finds that the other injunctive relief requested by Plaintiffs — impoundment and destruction — is superfluous in light of the Court's injunction. Plaintiffs have not alleged that Defendants pose a threat of copying the Copyrighted Work to sell. As the Court will prohibit Defendants from further using, publicizing or displaying the Copyrighted Work or Illicit Games, Plaintiffs can point to no irreparable harm or hardships from the Court's refusal to order the destruction or impoundment of the Copyrighted Work.

### D. Attorneys' Fees and Costs

Plaintiffs also request an award of attorneys' fees and costs. The Copyright Act provides that a "court in its discretion may allow the recovery of full costs" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A district court retains "broad leeway" in applying the fee-shifting provision, but it "may not award attorney's fees as a matter of course; rather, a court must make a more particularized, case-by-case assessment." *Kristaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). The Supreme Court has directed district courts to consider "several nonexclusive factors," including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* Ultimately, "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Id.* at 209.

First, with respect to motivation, it seems that vindicating their copyright rights motivated Plaintiffs to bring this suit. Plaintiffs have not taken any objectively unreasonable or frivolous positions, especially in light of Defendant's failure to respond to the suit. The Court finds that these factors warrant an award of attorneys' fees in this case.

Plaintiffs have submitted an affidavit in support of their claim for reasonable attorneys' fees and costs in the amount $14,112.80. The Court has reviewed the affidavit and itemized records and finds the requested fees and costs reasonable.

### IV. CONCLUSION

Plaintiffs have satisfied the requirements for a default judgment, and the Court will enter a judgment in favor of Plaintiffs for $20,000 in statutory damages and $14,112.80 in attorneys' fees and costs. Additionally, Plaintiffs may recover pre-judgment interest from January 31,

2022, and post-judgment interest at the interest rate provided by 28 U.S.C. § 1961(a). Finally, the Court will enjoin Defendants and each of their officers, agents, employees, attorneys and all those in active concert or participation with them, from infringing Plaintiffs' rights under federal or state law with respect to the Copyrighted Work, including, without limitation, (1) Defendants' continued use, publication, and display of the Copyrighted Work; (2) Defendants' continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and (3) Defendants' use of the Illicit Games.

    Let the Clerk file a copy of this Memorandum Opinion and electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: November 7, 2022